**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

THE FARM, LLC d/b/a CURATED
AMERICAN GETAWAYS, LLC,

      Debtor.

_____/

Case No. 6:24-bk-00362-LVV

Chapter 11
Subchapter V
EIN:  46-0629913

**VERIFIED DISCLOSURE REGARDING**
**DEBTOR'S CASH MANAGEMENT SYSTEM**

Debtor, THE FARM, LLC d/b/a CURATED AMERICAN GETAWAYS, LLC
("Debtor"), as the debtor and debtor-in-possession, makes this verified disclosure regarding the
Debtor's cash management system, stating as follows:

**BACKGROUND**

1.      On January 25, 2024 (the "Petition Date"), the Debtor filed a voluntary petition for
relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

2.      Debtor operates full-service luxury short stay estate rentals around the
country.  Debtor is in the travel industry with a particular focus towards online booking of their
accommodations.  As such, over 95 percent of the Debtor's revenue is tendered to the Debtor by
credit or debit card.  Debtor must have a means by which their guests may facilitate payment
through these methods in order for Debtor to operate.

3.      On the Petition Date, these credit card transactions were processed by Ten Twenty
Four Inc., d/b/a Beyond Pricing a/k/a Tally and Finix Payments, Inc.  More specifically, Debtor
processed such payments as merchant of record in the normal course of business using the third-
party credit card intermediary processor known to debtor as Tally.  Tally is apparently a

1

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

subprocessor of a larger entity known as Beyond Payments, a creditor party to this case for refunds issued by the creditor on Debtor's behalf.  Beyond Payments is apparently a subprocessor affiliate of a larger processing entity known as Finix Payments, Inc.  It appears common in the credit card processing industry that the branded label processing entity may have several subprocessor affiliates that are unknown to the customer (here, the Debtor) receiving payment processing services.  However, the Debtor's previous Processor unilaterally stopped processing the Debtor's transactions.  As such, the Debtor was forced to look for alternative arrangements to process payments.

4.    As this case has progressed, the Debtor has rejected certain properties to reorganize the business for a more efficient operation, and many of the guests who were affected by the divestiture of those properties opted to file chargeback claims with their credit card issuer on the monies they paid for bookings on the properties rather than file a proof of claim in this case.

5.    The guest credit card issuer recovered these monies from Tally AKA Beyond Payments, an apparent subprocessor affiliate of Finix Payments, Inc.  Tally AKA Beyond Payments eventually determined that they could no longer accommodate credit card payment processing services for the Debtor given the exposure to them that accompanied Debtor's Reorganization.  They notified Debtor of this decision on or around May 30, 2024.

6.    The loss of a credit card processor could have a terminal effect on an entity such as the Debtor, where such a significant portion of the Debtor's income is generated through guest credit card payments.  As such, upon learning of the cessation of processing services to Debtor by Tally AKA Beyond Payments, Debtor faced a moment requiring swift action by the Debtor in order to ensure continuity of operations.

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

7.      TFCE, LLC is a Delaware limited liability company formed by Katie Martin Loane, Jacob Martin, and Angela Martin on November 2, 2023.  The stock ownership of TFCE, LLC is the same stock ownership percentage as the Debtor company:  80% held by Katie Martin Loane; 10% held by Jacob Martin; and 10% held by Angela Martin.  The original formation purpose of the entity in November 2023 was to begin to acquire some new properties through this entity to diversify risk.  However, TFCE, LLC never accumulated any assets or liabilities.  As of late May 2024, TFCE, LLC was an active entity in good standing with no history of commercial activity.  It did, however, have a credit card processor through Stripe, Inc.

8.      As of late May 2024, when the Debtor no longer had a direct credit card processor, and once the Debtor realized that it was seemingly impossible to obtain a new credit card processor relationship while Debtor was party to an open bankruptcy case, Debtor began to think of another quick solution to this potentially terminal problem.  It is common in the short-term rental industry to engage a property management company to handle the marketing, reservation, booking, and servicing of guest stays and experiences, including the processing of credit card payments.  The property management company charges a fee for their services, and the property management company remits to the business a net payment at a certain interval.

9.      Given the limited universe of solutions, the Debtor engaged TFCE, LLC to provide comprehensive property management services for the Debtor.  This solution meant that the Debtor would not need to have a credit card processor and also would not have payments collected for it by another entity.  Rather, the management company (TFCE, LLC) collects monies paid by guests as monies paid to the property management company, and the property management company remits the income due to the Debtor as its customer.  Initially, TFCE, LLC remitted these payments to Debtor in rounded dollar amounts at inconsistent intervals, and it had the luxury to do so given

3

that it was operated by the same individuals as the Debtor. However, once the parties stabilized from the initial problem, they developed a clearer, interval-based percentage remittance.

10.    The pathway to payment processing restabilization does not quite end here. The payment processor for TFCE, LLC notified TFCE in late July that the refund threshold for payments processed by TFCE was significantly higher than normal. The reason for this higher-than-average refund percentage is because of payments that the entity processed for properties from which the Debtor ultimately divested and for which the guest needed to be refunded. The high refund percentage by TFCE caused the payment processor to implement a 50% reserve on each payment processed by TFCE, such that the payment processor would hold 50% of each payment processed by TFCE for a period of 90 days in order to better protect the risk exposure of the processor for TFCE.

11.    The challenge of a 50% reserve, of course, is that receiving only half of the monies from guest payments impacts the viability of both the property management company and of its client, the Debtor. Once again, the Debtor needed to revisit a continuity of operation strategy that would not require such a hold.

12.    USAStays, Inc. is a Wyoming Corporation founded on February 3, 2024, by Jacob Martin, who holds 100% of the shares of the Corporation. He formed the corporation in order to have a means of operating estates that he may wish to acquire separately from the Debtor. USAStays, Inc. was able to obtain a stable credit card processor to process payments. Given the decision made by the credit card processor for TFCE, LLC to implement a 50% reserve on sales, it was and is still in the best interest of the estate that Debtor modify its operations to engage USAStays, Inc. as the property management company, the services of which include processing credit card payments without any reserve hold. Additionally, USAStays, Inc.

4

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

has a different ownership structure from Debtor, which makes the bona fide separation of the two entities clearer than between Debtor and TFCE, LLC.

13.    Post-confirmation, Debtor should be eligible to return to direct credit card payment processor relationships like they enjoyed prior to the commencement of this case.  However, in the interim, engaging USAStays, Inc. to provide property management services that include processing credit card payments is the most logical and economical means to continue to operate the Debtor's business and achieve a successful reorganization.

14.    USAStays, Inc. can charge property management fees that are significantly lower than market average property management fees for similarly situated properties.  Further, USAStays, Inc.'s structured remittance of net funds to Debtor clearly separates its existence and its operations from that of the Debtor.

15.    This cash management solution through property management by USAStays, Inc. is a sound solution in the Debtor's business judgment.  It is a common practice in the Debtor's industry for a property management company distinct from the Debtor to be engaged to provide operational services.  Using USAStays, Inc. to provide property management services, including credit card processing services, benefits the estate and creditors by charging Debtor management fees that are tremendously lower than any other property management company the Debtor could engage, and ultimately it is the only means by which Debtor can continue to process credit card payments until confirmation.

## APPLICABLE LAW

16.    Sections 327, 328, 329, and 330 of the Bankruptcy Code provide for the employment and compensation of professionals.

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

17.    Numerous courts have held that a property manager (like the property managers that the Debtor has engaged here) are not professionals that require court approval.  *See In re McClure*, No. 1:13-bk-10386-GM, 2023 WL 2683508, 2023 Bankr. LEXIS 796 (Bankr. C.D. Cal. Mar. 29, 2023) (holding that ". . . a property manager is not a professional person and its fees do not fall under §§ 327-330").

18.    "In the context of a debtor proceeding, persons in occupations ordinarily considered professions are not necessarily professionals whose retention by the estate requires court approval. For the purposes of section 327(a), 'professional person' is limited to persons in those occupations which play a central role in the administration of the debtor proceeding.  Court approval is required for the retention of attorneys, accountants, appraisers, auctioneers and persons in other professions intimately involved in the administration of the debtor's estate." *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) (concluding that maritime engineers were not "professionals" under § 327 because although "[t]he court recognizes that the maritime engineers proposed by Seatrain will play an important role in the mechanics of Seatrain's operation[,] [t]heir retention, however, will not affect the administration of Seatrain's reorganization").

19.    "While a property manager may consider himself or herself a 'professional,' this court is not persuaded that the person or company that rents apartments and arranges for maintenance is any more professional, in the bankruptcy context, than a maritime engineer or lobbyist. Such services are necessary whether a Chapter 11 has been filed or not, and the nature of the services does not change significantly on account of the bankruptcy." *In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884 (Bankr. E.D. Wis. 1989); *see also In re Bannerman Holdings, LLC*, No. 10-01053-8-SWH, 2010 WL 2404313, 2010 Bankr. LEXIS 1932 (Bankr. E.D.N.C. June 10, 2010) (holding that "Toconis's role as a property manager does not rise to the level of a

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

'professional' within the meaning of § 327.  Instead, Toconis appears to be facilitating the

mechanics of the debtor's operations, which currently include leasing condominium units and

parking lot spaces").

20.    Moreover, the Honorable Karen S. Jennemann, United States Bankruptcy Judge

(retired), has held that there is no question that "persons providing property management services

are not professionals under Section 327 requiring court approval."  *In re Melbourne Beach, LLC*,

No. 6:17-bk-07975-KSJ, 2020 Bankr. LEXIS 2575, at *7 (Bankr. M.D. Fla. July 27, 2020).  Judge

Jennemann explained as follows:

> The Bankruptcy Code does not define professional persons.  Several courts define
> a professional person under Section 327 as "one who takes a central role in the
> administration of the bankruptcy estate and in the bankruptcy proceedings, as
> opposed to one who provides services to the debtor that are necessary regardless of
> whether a bankruptcy petition is filed."[ ]  Other courts categorize professional
> persons as "individuals and entities given broad discretion or autonomy in the
> administration of the debtor's bankruptcy estate."[ ]  <u>No matter the definition or
> factors considered, courts agree persons providing property management services
> are not professionals under Section 327 requiring court approval.</u>[ ]  **And this
> remains true even if the person providing the property management services
> is an interested insider**.

*Melbourne Beach, LLC*, No. 6:17-bk-07975-KSJ, 2020 Bankr. LEXIS 2575, at *7 (citations

omitted) (emphasis added).

## CONCLUSION

21.    As explained above, the Debtor has taken quick action to engage property managers

to ensure that the Debtor can continue to process credit card payments in the operation of its

business—something that is essential to the continued operation of the Debtor and to a successful

reorganization.  Court approval was not necessary to engage these operational property managers,

even though they are insiders.  *Melbourne Beach, LLC*, No. 6:17-bk-07975-KSJ, 2020 Bankr.

LEXIS 2575, at *7 (explaining that "this remains true even if the person providing the property

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

management services is an interested insider").  Accordingly, the use of a property management

company with shareholders who are insiders of the debtor to process credit card payments and

provide other property management services to the Debtor is consistent with the Bankruptcy Code

and is essential for a successful reorganization.

Respectfully submitted this 23rd of August, 2024,

_/s/  Jeffrey S. Ainsworth_
JEFFREY S. AINSWORTH
Florida Bar No. 60769
COLE BRANSON
Florida Bar No. 1049610
JACOB D. FLENTKE
Florida Bar No. 25482
Flentke Legal Consulting, PLLC, Of Counsel
**BransonLaw, PLLC**
1501 E. Concord St.
Orlando, FL  32803
Phone:  407-894-6834
Fax:  407-894-8559
Primary E-mail:  jeff@bransonlaw.com
                          cole@bransonlaw.com
Secondary :       lisa@bransonlaw.com
                          tammy@bransonlaw.com
Attorneys for Debtor

## VERIFICATION

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury that I have read the

foregoing, and it is true and correct.

Signature:_____

Printed Name:___Jacob Martin_____

Title:___President, The Farm, LLC_____

Executed on:___08 / 23 / 2024_____

8

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd of August, 2024, a true and correct copy of the foregoing has been provided electronically through the Court's CM/ECF filing system to all registered recipients; and via U.S. Mail to the following:

U.S. Trustee
400 W. Washington Street, Suite #1100
Orlando, FL  32801

THE FARM, LLC d/b/a CURATED AMERICAN GETAWAYS, LLC
601 Sycamore Street
Unit 6106
Kissimmee, FL  34747

/s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth, Esquire

Doc ID: 278427a746b21cc9612cc9000c0b6e50ffe844da