## EXHIBIT COVER SHEET

**Exhibit**

Party Submitting:   **May Ida Townson, U.S. Trustee for Region 21**

Admitted:   **YES   or   NO   (circle one)**   **1**

Debtor:   **THE FARM, LLC d/b/a CURATED AMERICAN GETAWAYS, LLC**

Case No.   **6:24-bk-00362-LVV**

Nature of Hearing:   **Trial on Debtor's Cash Management and Scheduling Deadlines on Debtor's Cash Management (related Doc. Nos. 361, 396, 402, 408)**

Trial Date:   **September 11, 2024 at 1:00 p.m.**

**United States Bankruptcy Court
Middle District of Florida**

**Dated:_____, 2024.**

**By: _____, Deputy Clerk**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

THE FARM, LLC d/b/a CURATED
AMERICAN GETAWAYS, LLC,

     Debtor.

_____/

Case No. 6:24-bk-00362-LVV

Chapter 11
Subchapter V
EIN: 46-0629913

# FIRST AMENDED PLAN OF
## <u>REORGANIZATION SUBMITTED BY THE FARM, LLC.</u>

Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
Cole B. Branson
Florida Bar No.: 1049610
E-mail: *cole@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559

**July 22, 2024**

1

## INTRODUCTION

**THE FARM, LLC.** proposes the following first amended plan of reorganization (the "**Plan**") pursuant to subchapter V of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). Capitalized terms used in the Plan and not otherwise defined have the meanings ascribed to such terms in Article I of the Plan. Debtor, THE FARM, LLC., is the proponent of the Plan (the "**Plan Proponent**") within the meaning of section 1129 of the Bankruptcy Code.

This Plan provides for: 8 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders.

**SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1193 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 3019, THE PLAN PROPONENT RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE, OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.**

### A.  DESCRIPTION AND A BRIEF HISTORY OF THE BUSINESS OPERATIONS OF THE DEBTOR

The Debtor is a limited liability company organized as THE FARM LLC in Kentucky on June 21, 2012, and which registered in Florida to do business as ("d/b/a") CURATED AMERICAN GETAWAYS, LLC on April 11, 2023. As illustrated on the Debtor's website, www.thefarmllc.com, the Debtor offers high-end, luxury vacation homes and venues for short-term rental at locations across the United States, along with excursions and experiences in connection with same.  The Debtor, as tenant, has entered into approximately twenty-five (25) separate lease agreements ("Leases") for the vacation homes and venues (the "Properties") with terms for a duration of one year or longer; and the Debtor then rents those Properties to the general public on a short-term (generally weekly) basis. The Debtor's principal place of business is located at 601 Sycamore Street, Unit 6106, Kissimmee, Florida, 34747, which is leased from Evelio A. Perez (an individual who is not an insider). In 2022, the Debtor had gross revenues in the amount of $6,133,420.00; and in 2023, the Debtor had gross revenues in the amount of $11,138,563.00.

### B.  Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached as **Exhibit A**. Based upon the Liquidation Analysis, in a hypothetical Chapter 7 case, non-priority unsecured creditors would receive a distribution valued at zero ($0.00) cents on the dollar.

### C.  Projections with Respect to the Ability to Make Payments under the Plan

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business. The Plan Proponent has

provided projected financial information as **Exhibit B**. The Debtor's projected Disposable Income over the life of the Plan is $199,650.00.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THE PLAN CAREFULLY AND DISCUSS IT WITH YOUR ATTORNEY AND ACCOUNTANT OR OTHER FINANCIAL ADVISOR IF YOU HAVE ANY QUESTIONS. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

### ARTICLE I – DEFINITIONS – INTERPRETATION

A.  **Definitions**

For purposes of this Plan, the following definitions shall apply unless the context clearly requires otherwise:

**Administrative Claim** shall mean any Claim for the payment of an Administrative Expense.

**Administrative Expense** shall mean any cost or expense of administration of the Chapter 11 Case that is allowed under §§ 503(b) or 507(a)(2) of the Bankruptcy Code, to the extent the party claiming any such cost or expense files an application, request, or motion seeking such cost or expense in the Chapter 11 Case on or before the applicable Administrative Claims Bar Date, including (i) any actual and necessary costs and expenses of preserving the estate or operating the business of the Debtor in Possession (including wages, salaries, or commissions for services rendered) incurred after the Petition Date, (ii) any post-petition cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in Possession in the ordinary course of its business, (iii) any claim granted administrative priority status by a Final Order of the Bankruptcy Court, and (iv) compensation or reimbursement of expenses of professionals awarded or Allowed pursuant to an order of the Bankruptcy Court under §330(a) or 331 of the Bankruptcy Code, 28 U.S.C. §§ 1911-30; and (v) any and all other costs or expenses of administration of the Chapter 11 Case that are Allowed by a Final Order of the Bankruptcy Court; provided, however, that notwithstanding anything to the contrary contained herein, when used in the Plan, the term "Administrative Expense" shall not include any Priority Tax Claim, any transferred claim, any Disallowed Claim, or unless otherwise expressly provided in the Plan, any of the Claims in Classes 1 through 10.

**Allowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest (a) proof of which was filed with the Bankruptcy Court on or before the Bar Date, and (i) as to which no objection has been filed by the Objection Deadline, unless such Claim or Interest is to be determined in a forum other than the Bankruptcy Court, in which case such Claim or Interest shall not become allowed until determined by Final Order of such other forum and Allowed by Final Order of the Bankruptcy Court; or (ii) as to which an objection was filed by the Objection Deadline, to the extent Allowed by a Final Order; (b) Allowed by a Final Order; or (c) listed in the Debtor's schedules filed in connection with this Chapter 11 Case and not identified as contingent, unliquidated, or disputed.

**Allowed Administrative Claim** shall mean all or that portion of any Administrative Claim which has been or becomes allowed by Order of the Bankruptcy Court.

**Allowed Amount** shall mean the amount of an Allowed Claim.

**Allowed Priority Non-Tax Claim** shall mean a Priority Non-Tax Claim entitled to priority pursuant to §§507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code, to the extent such Priority Non-Tax Claim is or becomes an Allowed Claim.

**Allowed Priority Tax Claim** shall mean a Priority Tax Claim pursuant to 11 U.S.C. § 507(a)(8), to the extent such Priority Tax Claim is or becomes an Allowed Claim.

**Allowed Secured Claim** shall mean a Secured Claim to the extent provided under § 506 of the Bankruptcy Code and to the extent that neither the Lien underlying the Claim is challenged nor the amount of the Claim is challenged as provided for herein.

**Ally** shall mean Ally Bank

**Ally Claim 16 Collateral** shall mean the 2020 Ford Transit Extended Passenger Van T-350 XLT Low Roof 3.5L V6 with VIN: 1FBAX2Y85LKA2285.

**Ally Claim 17 Collateral** shall mean the 2020 Ford Transit Extended Passenger Van T-350 XLT Low Roof 3.5L V6 with VIN:1FBAX2Y89LKA43223.

**Ally Claim 18 Collateral** shall mean the 2020 Chevrolet Silverado 1500 Extended Cab Work Truck 4WD 5.3L V8 with VIN:1GCRYAEF2LZ172775.

**Ally Claim 19 Collateral** shall mean the 2021 Cadillac Escalade ESV Utility 4D Luxury 4WD 3.0L I6 T-Diesel with VIN:1GYS4JKT6MR394108.

**Ally Claim 20 Collateral** shall mean the 2018 Chevrolet Silverado 1500 Extended Cab LS 4WD 5.3L V8 with VIN:1GCVKNEC4JZ289137.

**Bankruptcy Code** shall mean 11 U.S.C. § 101 *et seq*., and any amendments thereto.

**Bankruptcy Court** shall mean the United States Bankruptcy Court for the Middle District of Florida, Orlando Division, and any Bankruptcy Court having competent jurisdiction to hear appeals or *certiorari* proceedings therefrom.

**Bankruptcy Rules** shall mean the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr. P."), as amended, and as supplemented by the Local Rules of Practice and Procedure of the Bankruptcy Court, as amended ("The Local Rules").

**Bar Date** shall mean either April 4, 2024, for non-governmental units, or 180 days from the Petition Date, for governmental units, the dates fixed by order of the Bankruptcy

Court by which proofs of Claim or Interest must be filed against the Debtor.  For creditors not already listed as of April 4, 2024, the Bar Date shall mean August 2, 2024.

**Bridgecrest** shall mean Bridgecrest Acceptance Corporation.

**Bridgecrest Collateral** shall mean the 2020 Ford Transit Van.

**Business Day** shall mean any day except Saturday, Sunday, or any legal holiday.

**Cash** shall mean cash or cash equivalents, including, but not limited to, checks, bank deposits or other similar items.

**Causes of Acton** shall mean the following actions and causes of action and the proceeds thereof, whether or not commenced as of the date hereof, all of which shall be vested in the Debtor: (a) all proceedings, commenced or to be commenced pursuant to Bankruptcy Code § 502 and §§ 544-551 (or equivalent provisions of applicable non-bankruptcy law); and (b) all claims against Creditors or Holders of Interests, parties having dealings, relationships, or transactions with or related to the Debtor, and any party named or identified in the Debtor's schedules, statement of financial affairs, or any pleadings filed in this Chapter 11 case; and (c) the Debtor's right of setoff, recoupment, contribution, reimbursement, subrogation, or indemnity and any other indirect claim of any kind whatsoever.

**Chapter 11 Case** shall mean the Chapter 11 reorganization case of the Debtor pending in the Bankruptcy Court, specifically Case No. 6:24-bk-00362-LVV, under the caption *In re THE FARM, LLC.*

**Claims Objection Bar Date** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Class** shall mean a group of Claims or Interests substantially similar to each other as classified under this Plan.

**Class 1 Claim, Class 2 Claim, Class 3 Claim**, *etc.* shall mean the specific Class into which Claims or Interests are classified pursuant to Article II of the Plan.

**Code** shall mean the United States Bankruptcy Code, 11 U.S.C. § 101, *et seq.*, and any amendments thereto.

**Confirmation** shall mean the process leading to and including the entry of the Confirmation Order pursuant to § 1191 of the Code.

**Confirmation Date** shall mean the date the Confirmation Order becomes final and non-appealable.

**Confirmation Hearing** shall mean the hearing set by the Bankruptcy Court for the hearing on confirmation of the Debtor's Plan.

**Confirmation Order** shall mean the order entered by the Bankruptcy Court confirming the Plan.

**Consensual Plan** shall mean a plan as to which each Class of Claims has voted to accept the plan. Whether a Class of Claims has voted to accept a plan shall be determined in accordance with Section 1126 of the Bankruptcy Code (requiring at least two-thirds in amount and at least half in number of the Allowed Claims in such Class).

**Debtor** shall mean THE FARM, LLC.

**Debtor-in-Possession** shall mean THE FARM, LLC, as Debtor-in-possession in this Chapter 11 Case.

**Disallowed** when used with respect to a Claim or Interest, shall mean a Claim or Interest to the extent fourteen (14) days have expired since the Claim or Interest was disallowed by order of the Bankruptcy Court, unless proper application for a stay of such order has been made within such fourteen (14) day period and granted, in which case the Claim or Interest shall be disallowed thirty (30) days after entry of the order disallowing such Claim or Interest, unless prior to the expiration of such period, a stay is obtained with respect to the order disallowing the Claim or Interest.

**Disposable Income** shall mean the income that is received by the Debtor and that is not reasonably necessary to be expended for the payment of expenditures necessary for the continuation, preservation, or operation of the business of the Debtor.

**Disputed Claim** shall mean any Claim other than a Disallowed Claim that has not been Allowed by an order of the Bankruptcy Court and as to which (a) a Proof of Claim has been filed with the Bankruptcy Court or is deemed filed under applicable law or order of the Bankruptcy Court, and (b) an objection has been or may be timely filed or deemed filed under applicable law and any such objection has not been: (i) withdrawn; (ii) overruled or denied by an order of the Bankruptcy Court; or (iii) granted by an order of the Bankruptcy Court. In addition to the foregoing, a Disputed Claim shall also mean a Claim that has not been Allowed by an order of the Bankruptcy Court, whether or not an objection has been or may be timely filed, if (a) the amount of Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, (b) the classification of the Claim specified in the Proof of Claim differs from the classification of any corresponding Claim scheduled in the Debtor's schedules or set forth in the Plan, (c) any corresponding Claim has been scheduled in the Debtor's schedules as disputed, contingent, or unliquidated, (d) no corresponding Claim has been scheduled in the Debtor's schedules, or (e) such claim is reflected as unliquidated or contingent in the Proof of Claim filed with respect thereof. To the extent an objection relates to the allowance of only a part of the Claim, such Claim shall be a Disputed Claim only to the extent of the objection. To the extent that the amount of the Claim specified in the Proof of Claim exceeds the amount of any corresponding Claim scheduled in the Debtor's schedules, such

Claim shall be a Disputed Claim only to the extent of the amount specified in the Proof of Claim which is in excess of the amount of the Claim as scheduled.

**Distribution** shall mean the Distribution to the holders of Allowed Claims.

**Distribution Date** when used with respect to each Claim or Interest shall mean the date on which distributions to the Holder of the Claim will be made in accordance with the Plan.

**Effective Date** shall mean November 1, 2024.

**Equity Interest** shall mean the interests in the Debtor held by Holders of existing common stock, including any and all options, warrants, or similar instruments for the acquisition of shares of existing common stock of the Debtor.

**Final Order** shall mean (a) an order, judgment, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court as may have jurisdiction over any proceeding in connection with the Chapter 11 Case for the purpose of such proceeding, which order, judgment, ruling or other decree has not been reversed, vacated, stayed, modified or amended and to which (i) no appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has been taken and is pending and the time for filing such appeal or petition for review, re-argument, rehearing, reconsideration or *certiorari* has expired, or (ii) such appeal or petition has been heard and dismissed or resolved and the time to further appeal or petition has expired with no further appeal or petition pending; (b) a stipulation or other agreement entered into which has the effect of any such aforesaid order, judgment, ruling or other decree with like finality.

**Fiscal Year** shall mean the fiscal year of the Debtor, which commences on the first day of January and concludes on the final day of December in that same calendar year.

**Governmental Authority** shall mean any agency, board, executive, court, commission, department, legislature, tribunal, instrumentality or administration of the United States, a foreign country or the State of Florida or any other State, provincial, territorial, municipal, local or other governmental entity in the United States or the Public Utilities Commission of any State or a foreign country.

**Holder** shall mean (a) as to any Claim, (i) the owner or holder of such Claim as such is reflected on the Proof of Claim filed with respect to such Claim, or (ii) if no Proof of Claim has been filed with respect to such Claim, the owner or holder of such Claim as shown on the schedules or books and records of the Debtor or as otherwise determined by order of the Bankruptcy Court, or (iii) if the owner or holder of such Claim has transferred the Claim to a third party and advised the Debtor or the Reorganized Debtor in writing of such transfer and provided sufficient written evidence of such transfer, the transferee; and (b) as to any Equity Interest, the record owner or holder of such Equity Interest as shown on the stock register maintained by the Debtor or the Transfer Agent or as otherwise determined by the Bankruptcy Court.

**Impaired** shall mean, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of § 1124 of the Bankruptcy Code.

**Interest** shall mean an issued or authorized outstanding share or shares of common stock, a warrant or warrants for the issuance of such share or shares, other stock, stock equivalents, limited partnership interest, or other equity instruments in the Debtor.

**Liabilities** shall mean any and all liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness of any and every kind and nature whatsoever, whether heretofore, now or hereafter owing, arising, due, payable, direct or indirect, absolute or contingent, liquidated or unliquidated, known or unknown, foreseen and unforeseen, in law, equity or otherwise, of or relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, or otherwise based in whole or in part upon any act or omission, transaction, event or other occurrence taking place prior to the Effective Date in any way relating to the Debtor or any affiliate, subsidiary, predecessor, successor or assign thereof, of any assets of the Debtor, the business or operations of the Debtor, the Chapter 11 Case, or the Plan, including any liabilities, obligations, judgments, damages, charges, costs, Debts, and indebtedness based in whole or in part upon any Claim of or relating to successor liability, transferee liability, or other similar theory.

**Lien** shall mean any mortgage, lien, charge, security interest, encumbrance, or other security device of any kind affecting any asset or property of the Debtor but only to the extent that such interest is recognized as valid by a court of competent jurisdiction if the validity or scope of such interest is challenged by the Debtor or any other party with standing to bring such a challenge.

**Nonordinary Course Administrative Claim** shall mean an Administrative Claim other than an Ordinary Course Administrative Claim.

**Nonconsensual Plan** shall mean a plan that meets all applicable requirements in § 1129(a) of the Bankruptcy Code are met, except for those in paragraphs (8), (10), and (15), and at least one Class of Claims has submitted ballots voting to reject the plan, as determined in accordance with Section 1126 of the Bankruptcy Code.

**Objection Deadline** shall mean the date by which objections to Claims and Interests must be filed with the Bankruptcy Court; to wit, 60 days after the Confirmation Date, unless otherwise extended by the Bankruptcy Court.

**Order** shall mean a determination, decree, adjudication, or judgment issued or entered by the Bankruptcy Court.

**Ordinary Course Administrative Claim** shall mean an Administrative Claim incurred post-petition in the ordinary course of business of the Debtor; provided, however, that any due and unpaid post-petition payment with respect to rejected, or to be rejected, executory contracts or unexpired leases shall not be an Ordinary Course Administrative Claim.

8

**Osceola** shall mean Osceola County, Florida.

**Osceola Collateral** shall mean all real and personal property owned by the Debtor.

**Payment** shall mean the Cash to be paid under the Plan to the holders of Allowed Claims.

**Petition Date** shall mean January 25, 2024, the date on which the petition for relief was filed in the Debtor's Chapter 11 Case.

**Plan** shall mean this Chapter 11, Subchapter V, Plan of Reorganization, as amended or modified in accordance with the Bankruptcy Code.

**Plan Payment** shall mean payments made by the Reorganized Debtor pursuant to the terms of the Plan.

**Prepetition** shall mean the period of time preceding the Petition Date and concluding on the Petition Date.

**Priority Non-Tax Claim** shall mean a Claim entitled to priority pursuant to §§ 507(a)(3), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of the Bankruptcy Code.

**Priority Tax Claim** shall mean a Claim entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code.

**Professional** shall mean (i) any professional retained in the Chapter 11 Case pursuant to an order of the Bankruptcy Court in accordance with §§ 327 or 1103 of the Bankruptcy Code; (ii) any attorney or accountant seeking compensation or reimbursement of expenses pursuant to § 503(b) of the Bankruptcy Code; and (iii) any entity whose fees and expenses are subject to approval by the Bankruptcy Court as reasonable pursuant to §1129(a)(4) of the Bankruptcy Code.

**Reorganized Debtor** shall mean THE FARM, LLC., following the Effective Date.

**Rule or Rules** shall mean the Federal Rules of Bankruptcy Procedure, as supplemented by the Local Bankruptcy Rules as adopted by the Bankruptcy Court.

**SBA** shall mean the U.S. Small Business Administration.

**SBA Collateral** shall mean All tangible and intangible personal property, including, but not limited to: (a) inventory, (b) equipment, (c) instruments, including promissory notes (d) chattel paper, including tangible chattel paper and electronic chattel paper, (e) documents, (f) letter of credit rights, (g) accounts, including health-care insurance receivables

and credit card receivables, (h) deposit accounts, (i) commercial tort claims, (j) general intangibles, including payment intangibles and software and (k) as extracted collateral as such terms may from time to time be defined in the Uniform Commercial Code. The security interest Borrower grants includes all Accessions, attachments, accessories, parts, supplies and replacements for the Collateral, all products, proceeds and collections thereof and all records and data relating thereto.

**Secured Claim** shall mean a Claim secured by a Lien which is perfected and enforceable under applicable law, and which is not subject to avoidance under the Code or other applicable nonbankruptcy law. A Secured Claim which is challenged by the Debtor shall only be Allowed to the extent that such claim is deemed to be Allowed in the Plan or the underlying security interest is recognized as valid by the Bankruptcy Court and the difference in amount between such a Creditors Allowed Claim and its Allowed Secured Claim shall be an Allowed Unsecured Claim.

**Security Interest** shall mean "security interest" as defined in § 101(51) of the Code.

**Substantial Consummation** shall be when distribution commences under the Plan.

**Trustee** shall mean the trustee to be appointed in this case pursuant to 11 U.S.C. § 1183 (a).

**Unimpaired Claim** shall mean a Claim that is not impaired within the meaning of § 1124 of the Bankruptcy Code.

**United States Trustee** shall have the same meaning ascribed to it in 28 U.S.C. § 581, *et seq.* and, as used in the Plan, refers to the office of the United States Trustee for Region 21, located in the Middle District of Florida, Orlando, Florida.

**Unsecured Claim** shall mean a Claim other than an Administrative Expense, a Priority Non-Tax Claim, a Priority Tax Claim, a Secured Claim, or an Equity Interest.

**B.** **Bankruptcy Code Definitions**
Definitions in the Bankruptcy Code and Bankruptcy Rules shall be applicable to the Plan unless otherwise defined in the Plan. The rules of construction in Bankruptcy Code §102 shall apply to the Plan.

**C.** **Undefined Terms**
A term used in the Plan and not defined herein has the meaning ascribed to such term in the Bankruptcy Code or Rules.

**D.** **Interpretation**
Unless otherwise specified, all sections, articles and exhibits referenced in the Plan are to the respective sections in, articles of, or exhibits to, the Plan, as the same may be

amended, waived, or modified from time to time. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof. Words denoting the singular number shall include the plural number and vice versa, and words denoting one gender shall include the other gender. As to contested matters, adversary proceedings, and other actions or threatened actions, this Plan shall not be construed as a stipulation or admission, but rather, as a statement made in settlement negotiations. Any capitalized term used in the Plan that is not defined in the Plan but that is defined in the Bankruptcy Code or in the Bankruptcy Rules, as the case may be, the Bankruptcy Code or the Bankruptcy Rules definition will be controlling in the case of a conflict or ambiguity.

## ARTICLE II –CLASSIFICATION OF CLAIMS AND INTERESTS

**A.**      **General Rules of Classification**

Generally, a Claim or Interest is classified in a particular Class only to the extent the Claim or Interest qualifies within the description of the Class and is classified in another Class or Classes to the extent any remainder of the Claim qualifies within the description of such other Class. If a Claim qualifies for inclusion in a more specifically defined Class, then the Claim shall be included only in the more specifically defined Class. Notwithstanding anything contained herein to the contrary, if a Claim is not allowed, then the Debtor is not bound by a classification made or implied herein.

**B.**      **Classifications**

All Claims and Interests treated under Articles III - V of the Plan are divided into the following classes, which shall be mutually exclusive:

Class 1 – Ally Claim 16 Secured Claim

Class 1 consists of the Ally Claim 16 Secured Claim. This Claim is secured by a lien on the Ally Claim 16 Collateral. The amount of the Class 1 Secured Claim is $36,525.23, less payments made preconfirmation.  Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Class 2 – Ally Claim 17 Secured Claim

Class 2 consists of the Ally Claim 17 Secured Claim. This Claim is secured by a lien on the Ally Claim 17 Collateral. The amount of the Class 2 Secured Claim is $40,934.70, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

Class 3 Ally Claim 18 Secured Claim

Class 3 consists of the Ally Claim 18 Secured Claim. This Claim is secured by a lien on the Ally Claim 18 Collateral. The amount of the Class 3 Secured Claim is $34,678.04, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

Class 4 Ally Claim 19 Secured Claim

Class 4 consists of the Ally Claim 19 Secured Claim. This Claim is secured by a lien on the Ally Claim 19 Collateral. The amount of the Class 4 Secured Claim is $68,790.11,

less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

### Class 5 Ally Claim 20 Secured Claim

Class 5 consists of the Ally Claim 20 Secured Claim. This Claim is secured by a lien on the Ally Claim 20 Collateral. The amount of the Class 5 Secured Claim is $32,624.37, less payments made prepetition. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

### Class 6 Bridgecrest Secured Claim

Class 6 consists of the Bridgecrest Secured Claim. This Claim is secured by a lien on the Bridgecrest Collateral. The amount the Class 6 Secured Claim is $41,084.54, less payments made prepetition. This Class is Unimpaired.

### Class 7 – Osceola Secured Claim

Class 7 consists of the Osceola Secured Claim. This Claim is secured by a lien on the Osceola Collateral. The amount of the Class 7 Secured Claim is $4,391.22. This Class is Unimpaired.

### Class 8 SBA Secured Claim

Class 8 consists of the SBA Secured Claim. This Claim is secured by a lien on the SBA Collateral. The amount of the Class 8 Secured Claim is $195,550.00. This Class is Impaired.

### Class _9 - General Unsecured Claims

Class 9 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

### Class 10 – The Farm, LLC. Equity Interests

Class 10 consists of any and all equity interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

## ARTICLE III – ADMINISTRATIVE EXPENSES

### A.    Administrative Claims

1.    **Nonordinary Course Administrative Claims**

a.    Any person, including any professional, including the Subchapter V Trustee, and any landlord, who has rendered value or services to the Debtor during the course of this Case that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code and Claims for unpaid postpetition rent, but excluding Ordinary Course Administrative Claims as discussed *infra*, shall, on or before the Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and the basis for such Claim; provided, however, that applicants who

have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of Nonordinary Course Administrative Claim shall bar such claimant from seeking recovery on such Claim.

b.      **Consensual Plan Treatment:**

Each holder of a Nonordinary Course Administrative Claim shall be paid one hundred percent (100%) of its Allowed Nonordinary Course Administrative Claim in thirty-six (36) equal monthly payments beginning on the later of the Effective Date or the first day of the first full month after such Claim becomes Allowed, or as the holder of such Claim and the Debtor may otherwise agree.

c.      **Nonconsensual Plan Treatment:**

Each holder of a Nonordinary Course Administrative Claim shall be paid one hundred percent (100%) of its Allowed Nonordinary Course Administrative Claim in thirty-six (36) equal monthly payments beginning on the later of the Effective Date or the first day of the first full month after such Claim becomes Allowed, or as the holder of such Claim and the Debtor may otherwise agree.

2.      **Ordinary Course Administrative Claims**

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of the agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

B.      <u>Priority Tax Claims</u>

Except to the extent that the Holder and the Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim[1] against the Debtor shall receive on account of such Claim, the amount of such Holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a five (5) year amortization and maturity from the Petition Date in equal payments made monthly. Holders of Allowed Secured Tax Claims shall receive interest at the statutory rate.  Payments will commence on the later of the Effective Date or on the first day of the first full month such Priority Tax Claim becomes Allowed. Priority Tax Claims shall be paid directly by the Debtor.

C.      <u>Priority Non-Tax Claims</u>

---

[1]  Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. 507(a)(8) shall be treated as a Class 9 General Unsecured Claim.

Any person that asserts a Priority Non-Tax Claim shall, on or before the Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as a Priority Non-Tax Claim, specifying the amount of and the basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of a Priority Non-Tax Claim shall bar such claimant from seeking recovery on such Claim.

### a.    **Consensual Plan Treatment:**

If the Class of Allowed Priority Non-Tax Claim Holders vote in favor of the Plan, such Class shall receive deferred cash payments based on a three (3) year amortization and maturity from the Effective Date with payments made monthly.

### b.    **Nonconsensual Plan Treatment:**

Each holder of a Allowed Priority Non-Tax Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim over thirty-six (36) equal monthly payments.

## ARTICLE IV – TREATMENT OF UNIMPAIRED CLASSES

### Class 6 Bridgecrest Secured Claim

Class 6 consists of the Bridgecrest Secured Claim. This Claim is secured by a lien on the Bridgecrest Collateral. The amount the Class 6 Secured Claim is $41,084.54, less payments made prepetition. This Class is Unimpaired.

Bridgecrest shall retain its lien on the Bridgecrest Collateral, and the Debtor shall pay the Bridgecrest Class 6 Claim in accordance with the contract documents that gave rise to said claim

### Class 7 – Osceola Secured Claim

Class 7 consists of the Osceola Secured Claim. This Claim is secured by a lien on the Osceola Collateral. The amount of the Class 7 Secured Claim is $4,391.22. This Class is Unimpaired.

The Debtor will pay or cause to be paid the Allowed Secured Claim of Osceola in full on the Effective Date. This claim shall be paid directly by the Debtor.

### Class 10 – The Farm, LLC Equity Interests

Class 10 consists of any and all equity interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

Holders of a Class 10 interests shall retain their full equity interest in the same amounts, percentages, manner and structure as existed on the Petition Date.

## ARTICLE V – TREATMENT OF IMPAIRED CLASSES OF CLAIMS

A.    **Determination of Allowed Amounts**

Treatment prescribed for Claims and Interests in the following sections of Article V shall in all events refer exclusively to the Allowed Amount of each respective Claim. In the event the Allowed Amount of any Claim is not determined by agreement or otherwise prior to the date on which the Plan provides for a Distribution to be made on account of such Claim, then no Distribution on account of such Claim shall be made until the Claim becomes an Allowed Claim. Notwithstanding Confirmation of the Plan, the Debtor reserves the right to object to any Claim (other than Claims deemed in the Plan to be Allowed Claims) for any reason authorized by applicable bankruptcy and nonbankruptcy law, as well as the right to assert that any such Claim includes amounts subject to equitable subordination or other relief, equitable or otherwise. The Reorganized Debtor will be responsible for all Claim objections, and all such objections will be filed on or before the Claims Objection Bar Date. Entry of the Confirmation Order shall be deemed to be recognition that the Bankruptcy Court expressly retains jurisdiction to adjudicate any objections to Claims filed on or before the Claims Objection Bar Date.

B.    **Impairment/Classification Controversies**

If there is a controversy regarding the classification or impairment of a Claim or Interest, then such controversy shall be determined by the Bankruptcy Court after notice and a hearing.

### Class 1 – Ally Claim 16 Secured Claim

Class 1 consists of the Ally Claim 16 Secured Claim. This Claim is secured by a lien on the Ally Claim 16 Collateral. The amount of the Class 1 Secured Claim is $36,525.23, less payments made preconfirmation.  Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 16 Collateral, and the Debtor shall pay the Ally Class 1 Claim in accordance with the contract documents that gave rise to said claim.

### Class 2 – Ally Claim 17 Secured Claim

Class 2 consists of the Ally Claim 17 Secured Claim. This Claim is secured by a lien on the Ally Claim 17 Collateral. The amount of the Class 2 Secured Claim is $40,934.70, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

Ally shall retain its lien on the Ally Claim 17 Collateral, and the Debtor shall pay the Ally Class 2 Claim in accordance with the contract documents that gave rise to said claim.

### Class 3 Ally Claim 18 Secured Claim

Class 3 consists of the Ally Claim 18 Secured Claim. This Claim is secured by a lien on the Ally Claim 18 Collateral. The amount of the Class 3 Secured Claim is $34,678.04, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

Ally shall retain its lien on the Ally Claim 18 Collateral, and the Debtor shall pay the Ally Class 3 Claim in accordance with the contract documents that gave rise to said claim.

### Class 4 Ally Claim 19 Secured Claim

Class 4 consists of the Ally Claim 19 Secured Claim. This Claim is secured by a lien on the Ally Claim 19 Collateral. The amount of the Class 4 Secured Claim is $68,790.11, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date.  This Class is Impaired.

Ally shall retain its lien on the Ally Claim 19 Collateral, and the Debtor shall pay the Ally Class 4 Claim in accordance with the contract documents that gave rise to said claim.

### Class 5 Ally Claim 20 Secured Claim

Class 5 consists of the Ally Claim 20 Secured Claim. This Claim is secured by a lien on the Ally Claim 20 Collateral. The amount of the Class 5 Secured Claim is $32,624.37, less payments made prepetition. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 20 Collateral, and the Debtor shall pay the Ally Class 5 Claim in accordance with the contract documents that gave rise to said claim.

### Class 8 SBA Secured Claim

Class 8 consists of the SBA Secured Claim. This Claim is secured by a lien on the SBA Collateral. The amount of the Class 8 Secured Claim is $195,550.00. This Class is Impaired.

To the extent that this Claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the Claim to the extent of the allowed amount of the secured claim; and (ii) receive on account of such Claim deferred cash payments totaling at least the allowed amount of the Claim, of a value, as of the Effective Date of the claimant's interest in the estate's interest in the property securing the claim. Accordingly, the Reorganized Debtor shall make three-hundred sixty (360) equal monthly payments of principal and interest in the amount of $905.62, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a thirty-year period with interest at the three and three-quarter percent (3.75%) per annum. This claim shall be paid directly by the Debtor

### Class 9 – General Unsecured Claims

Class 9 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

a.      **Consensual Plan Treatment:**

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. The Debtor proposes to pay unsecured creditors a *pro rata* portion of $201,000.00. Payments will be made in equal quarterly payments of $16,750.00. Payments shall commence on the fifteenth day of the month, on the first month that begins more than ninety days after the Effective Date and shall continue quarterly for eleven additional quarters. Pursuant to §1191, the value to be distributed to unsecured creditors is greater than the Debtor's projected disposable income to be received in the 3-year period beginning on the Effective Date. Holders of Class 9 claims shall be paid directly by the Debtor.

b.      **Nonconsensual Plan Treatment:**

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. Accordingly, the Debtor proposes to pay unsecured creditors a *pro rata* portion of its projected Disposable Income, $199,650.00. If the Debtor remains in possession, plan payments shall include the Subchapter V Trustee's administrative fee which will be billed hourly at the Subchapter V Trustee's then current allowable blended rate. Plan Payments shall commence on the fifteenth day of the month, on the first month that is one year after the Effective Date and shall continue annually for two additional years. The initial annual payment shall be $79,566.00. Holders of Class 9 claims shall be paid directly by the Debtor.

If the Debtor defaults in making an annual payment and fails to cure the payment default before the following annual's payment is due, then the Debtor shall liquidate assets to pay the holders of allowed unsecured claims.

## ARTICLE VI – EXECUTORY CONTRACTS AND UNEXPIRED LEASES

If the Bankruptcy Court has not previously entered an order approving assumption, rejection and/or assignment of leases and executory contracts, then the Confirmation Order shall constitute an order of the Bankruptcy Court approving all such assumptions, assignments, and rejections of executory contracts and unexpired leases as of the Petition Date, unless there is pending before the Bankruptcy Court on the Confirmation Date a motion to assume such executory contract or unexpired lease.

If an executory contract or unexpired lease is assigned, then the other party to the agreement may file a Claim for damages incurred by reason of the assignment within such time as the Bankruptcy Court may allow or be forever barred. Such Claim shall be served upon the Debtor. In the case of rejection of leases of real property, damages are limited under the Bankruptcy Code. Such claims shall be deemed to be Class 9 General Unsecured Claims. The Plan shall constitute adequate and sufficient notice to Persons or Entities which may assert a Claim for damages from the rejection of an executory contract or unexpired lease of the Bar Date for filing a Claim in connection therewith.

To the extent any indemnification obligation of the Debtor (whether pursuant to its charter, by-laws, agreement, or to law) existing as of the Petition Date to any current or former, officer, director or employee of the Debtor constitutes an executory contract, the Debtor shall be deemed to have rejected such contract immediately before the Petition Date pursuant to § 365 of the Bankruptcy Code.

## ARTICLE VII – MEANS OF PLAN IMPLEMENTATION

### A.    Continued Corporate Existence

The Debtor shall continue to exist as the Reorganized Debtor, doing business under the name THE FARM, LLC d/b/a Curated American Getaways, LLC. The Reorganized Debtor's officers, directors and administrative structure shall be as follows:

1.    **Administrative Structure**
       The following is a breakdown of the existing administrative structure:
              a.    Officers

      a.   Katie Martin Loane (CFO)
      b.   Jacob Lee Martin (CEO)
      c.   Angela Martin (COO)
   b.    Contract labor

The above listed administrative structure will continue to operate the Reorganized Debtor and will supervise the business operations of the Debtor.

    2.    **Officers**

The Officers of the Reorganized Debtor shall remain the same as the Officers of the Debtor. The Officers shall have broad authority with respect to the conduct of the business of the Reorganized Debtor, including the right and power to enter into agreements regarding project bidding, vendor and sub-contractor selection, to borrow money to pay obligations, and to exercise all other specific powers described in the Reorganized Debtor's operating agreement.

   **B.**    **Articles of Incorporation and Bylaws**

The Articles of Organization and Operating Agreement of the Debtor will be amended, as necessary, to include provisions required (a) under the Bankruptcy Code with respect to the Reorganized Debtor's equity interests and (b) the provisions of the Debtors' Plan. Consistent with Section 1123(a)(6) of the Bankruptcy Code, the Reorganized Debtor's Articles and Operating Agreement shall, among other things, prohibit the issuance of nonvoting equity securities as part of the reorganization. The Operating Agreement of the Reorganized Debtor shall be amended as necessary for the purpose of consummating and implementing the transactions and acts contemplated by this plan. The Confirmation Order shall include appropriate language approving the Reorganized Debtor's Articles of Organization and Operating Agreement. The Reorganized Debtor's amended Articles of Organization and Operating Agreement shall be the Articles and Operating Agreement governing the Reorganized Debtor on and after the Effective Date.

   **C.**    **Means for Implementing Plan**

    1.    **Business Operations and Cash flow**

The Plan contemplates that the Reorganized Debtor will continue to operate the Debtor's business.

    2.    **Funds Generated During Chapter 11**

Except as explicitly set forth in this Plan, all cash in excess of operating expenses generated from operation until the Effective Date will be used for Plan Payments or Plan implementation, cash on hand as of Confirmation shall be available for Administrative Expenses.

    3.    **Section 1146 Exemption**

Pursuant to Section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan, or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the re-vesting, transfer or sale of any real or personal property of the Debtor pursuant to, in implementation of,

or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.

        4.      **Employment of Professionals Post-Confirmation**

After the Effective Date, the Reorganized Debtor may retain professionals on such terms as the Reorganized Debtor deems reasonable without Bankruptcy Court approval. Persons who served as professionals to the Debtors prior to the Effective Date may also continue to serve the Reorganized Debtor.

    **D.**    <u>**Limitations of Liability**</u>

The Debtor, and the Reorganized Debtor, for the purpose of consummating and implementing the transactions and acts contemplated by this plan, shall have no liability to any entity for any act taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, implementation, confirmation or consummation of the initial Plan, or any contract, instrument, release or other agreement or document relating to, rising out of or in connection with the Plan, unless the liability of any entity that would otherwise result from any such act or omission was the result of gross negligence, fraud, or willful misconduct.

    **E.**    <u>**Termination of service of Subchapter V Trustee**</u>

        1.      **Consensual Plan:**

When the court confirms a consensual plan under Section 1191(a), the trustee's service terminates upon Substantial Consummation.

        2.      **Non-Consensual Plan:**

When the court confirms a non-consensual plan under the cramdown provisions of Section 1191(b), the trustee's service shall not terminate until all payments pursuant to the Plan and Section 1194 are made.

        3.      **Dismissal or Conversion**

Termination of the service of the Subchapter V Trustee shall occur upon dismissal of the case or its conversion to another chapter.

<u>**ARTICLE VIII – PROVISIONS GOVERNING DISTRIBUTION**</u>

    **A.**    <u>**Cash Payments**</u>

Cash payments made pursuant to the Plan shall be in U.S. funds, by check drawn against a domestic bank, or by wire transfer from a domestic bank.

    **B.**    <u>**Delivery of Distributions**</u>

Distributions and deliveries to Holders of Allowed Claims and Interests shall be made at the addresses set forth on the proofs of Claim or Interest filed by such Holders (or at the last known addresses of such holders if no proof of Claim or Interest is filed or if the Debtor or Reorganized Debtor have been notified of a change of address). If any distribution to a Holder is returned as undeliverable, then no further distributions to such Holder shall be made unless and until the Debtor or Reorganized Debtor are notified of the Holder's then-current address, at

which time all missed distributions shall be made to such Holder, without interest. All Claims for undeliverable distributions shall be made on or before the first anniversary of the Distribution Date. After such date, all unclaimed property shall revert to the Debtor or Reorganized Debtor, and the claim of any Holder with respect to such property shall be discharged and forever barred.

**C.    Time Bar to Cash Payments**

Checks issued by the Debtor or Reorganized Debtor with respect to Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of issuance thereof. Requests for re-issuance of any checks shall be made directly to the Debtor or Reorganized Debtor by the Holder of the Allowed Claim with respect to which such check originally was issued. Any Claim with respect to such a voided check shall be made on or before the later of the first anniversary of the Distribution Date or ninety (90) days after the date of issuance of such check. After such date, all Claims with respect to void checks shall be discharged and forever barred.

**D.    Transfer of Claim**

In the event that the Holder of any Claim shall transfer such Claim on or after the Effective Date, the Holder shall immediately notify the Reorganized Debtor in writing of such transfer and provide sufficient written evidence of the transfer. The Reorganized Debtor shall be entitled to assume that no transfer of any Claim has been made by any Holder unless and until the Reorganized Debtor has received written notice to the contrary. Each transferee of any Claim shall take such Claim subject to the provisions of the Plan and to any request made, waiver, or consent given or other action taken hereunder and, except as otherwise expressly provided in such notice, the Reorganized Debtor shall be entitled to assume conclusively that the transferee named in such notice thereafter shall be vested with all rights and powers of the transferor under the Plan.

## ARTICLE IX – PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**A.    Objection Deadline**

Unless extended by the Bankruptcy Court, the Debtor and the Reorganized Debtor shall file any objections to Claims or Interest no later than sixty (60) days after the Confirmation Date.

**B.    Prosecution of Objections**

The Debtor and the Reorganized Debtor shall have authority to file objections, litigate to judgment, settle, or withdraw objections to Disputed Claims or Interests. All professional fees and expenses incurred by the Debtor or Reorganized Debtor from and after the Confirmation Date shall be paid as provided in Article III hereof.

**C.    No Distributions Pending Allowances**

No payments or distributions shall be made with respect to any Disputed Claim or Interest unless and until all objections to such Claim or Interest are resolved and such Claim becomes an Allowed Claim or Interest.

D.    **Escrow of Allocated Distributions**

The Debtor shall withhold from the property to be distributed under the Plan, and shall place in escrow, amounts sufficient to be distributed on account of Contested Claims. As to any Contested Claim, upon a request for estimation by the Debtor, the Bankruptcy Court shall determine what amount is sufficient to withhold in escrow pending Disallowance of the Claim. The Debtor shall also place in escrow any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property withheld in escrow pursuant hereto, to the extent such property continues to be withheld in escrow at the time such distributions are made, or such obligations arise. If practicable, Debtor may invest any cash it has withheld in escrow in a manner that will yield a reasonable net return, taking into account the safety of the investment.

E.    **Distributions After Allowance**

Payments and distributions from escrow to each holder of a Disputed Claim, to the extent that such Claim ultimately becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which the respective holder belongs. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Claim becomes a Final Order, any property in escrow that would have been distributed prior to the date on which a Disputed Claim become an Allowed Claim shall be distributed, together with any dividends, payments, or other distributions made on account of, as well as any obligations arising from, the property from the date such distributions would have been due had such Claim then been an Allowed Claim to the date such distributions are made.

F.    **Distributions After Disallowance**

If any property withheld in escrow remains after all objections to Disputed Claims of a particular Class have been resolved, then such remaining property, to the extent attributable to the Disputed Claims, shall be distributed as soon as practicable in accordance with the provisions of the Plan governing the Class of Claims or Interest to which the Disallowed Claim or Interest belong.

## ARTICLE X – DISCHARGE

A.    **Consensual Plan:**

If the Debtor's Plan is confirmed under § 1191(a), the Debtor shall receive a discharge under § 1141(d)(1)(A) upon confirmation.

B.    **Non-Consensual Plan:**

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt:

1.    on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

2.    excepted from discharge under§ 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE XI– RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction to the extent allowed under applicable law until administrative closure of the bankruptcy case, subject to reopening.

## ARTICLE XII – MISCELLANEOUS

**A.      Modification of the Plan**

Pursuant to 11 U. S. C. § 1193(a) the Debtor reserves the right to modify the Plan at any time before confirmation, provided that the plan, as modified, meeting the requirement of sections 1122 and 1123 of this title, with the exception of subsection (a)(8) of section 1123. After any modification is filed with the court, the plan as modified becomes the Plan.

**B.      Confirmation Order and Plan Control**

To the extent that the Confirmation Order or the Plan is inconsistent with any agreement entered into between the Debtor and any third party, the Plan controls any such agreements, and the Confirmation Order (and any other orders of the Bankruptcy Court) shall be construed together with the terms of the Plan.

**C.      Governing Law**

Except to the extent that federal law (including the Bankruptcy Code or the Bankruptcy Rules) is applicable, or where the Plan or the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan provide otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida, without giving effect to the principles of conflicts of law thereof.

**D.      No Admissions**

Nothing herein shall be construed to be an admission of any fact by the Debtor or otherwise binding upon the Debtor in any manner prior to the Effective Date.

**E.      Revocation or Withdrawal of the Plan**

The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtor revokes or withdraws the Plan, or if confirmation of the Plan does not occur, then the Plan shall be deemed null and void in all respects and nothing contained in the Plan shall be deemed to: (a) constitute a waiver or release of any Claims by or against, or Equity Interests in, the Debtor or any other Person, or (b) prejudice in any manner the rights of the Debtor or any other Person in any further proceedings involving the Debtor.

**F.      Further Assurances**

The Debtor or the Reorganized Debtor (as the case may be) agree, and is/are hereby authorized, to execute and deliver any and all papers, documents, contracts, agreements, and instruments which may be necessary to carry out and implement the terms and conditions of the Plan.

**G.      Notices**

All notices, requests, or other documents in connection with, or required to be served by the Plan shall be in writing and shall be sent by United States Mail, postage prepaid, or by overnight delivery by a recognized courier service to the following:

Counsel for the Debtor and Reorganized Debtor:

Jeffrey S. Ainsworth, Esquire
1501 East Concord Street
Orlando, Florida 32803

Debtor and Reorganized Debtor:

THE FARM, LLC.
ATTN: Jacob Martin
601 Sycamore Street, Unit 6106
Kissimmee, FL 34747

United States Trustee:

Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, Florida 32801

Subchapter V Trustee

L. Todd Budgen
Budgen Law
Post Office Box 520546
Longwood, FL 32752

**H.    Estimated Claims**

To the extent any Claim is estimated for any purpose other than for voting, then in no event shall such Claims be Allowed in an amount Greater than the estimated amount.

**I.    Consent to Jurisdiction**

Except to the extent that any agreement, including any loan-related document emanating from this Plan provides for jurisdiction in another forum, upon any default under the Plan, the Debtor, the Reorganized Debtor, for the purpose of consummating and implementing the transactions contemplated by this Plan, consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, and agree that it shall be the preferred forum for all proceedings relating to any such default.

By accepting any distribution or payment under or in connection with the Plan, by filing any Proof of Claim, by voting on the Plan, or by entering an appearance in the Chapter 11 Case, all Creditors, Holders of Equity Interests and other parties in interest, including foreign Creditors, and foreign parties in interest, have consented and shall be deemed to have expressly

consented, to the jurisdiction of the Bankruptcy Court for all purposes with respect to any and all matters relating to, arising under or in connection with the Plan or the Chapter 11 Case, including the matters and purposes set forth in Article II of the Plan. The Bankruptcy Court shall maintain jurisdiction to the fullest extent allowed under applicable law over all matters set forth in Article II of the Plan.

### J.    Modification of Payment Terms

The Reorganized Debtor reserves the right to modify the treatment of any Allowed Claim, as provided in §1123(a)(4) of the Bankruptcy Code, at any time after the Effective Date upon consent of the Holder of such Allowed Claim.

### K.    Compliance with Tax Requirements

In connection with this Plan, to the extent applicable, the Reorganized Debtor in making distributions under this Plan shall comply with all tax withholding and reporting requirements imposed on it by any governmental unit and all Distribution, pursuant to this Plan, shall be subject to such withholding and reporting requirements. The Reorganized Debtor may withhold the entire Distribution due to any Holder of an Allowed Claim until such time as such Holder provides to the Reorganized Debtor, the necessary information to comply with any withholding requirements of any governmental unit. Any property so withheld will then be paid by the Reorganized Debtor to the appropriate authority. If the Holder of an Allowed Claim fails to provide the Reorganized Debtor the information necessary to comply with any withholding requirements of any governmental unit within six months after the date of first notification by the Reorganized Debtor to the Holder of the need for such information or for the Cash necessary to comply with any applicable withholding requirements, then the Holder's distribution shall be treated as an undeliverable distribution in accordance with the below. The payment of all taxes on all Distributions shall be the sole responsibility of the distributee.

### L.    Distribution of Unclaimed Property

Except as otherwise provided in this Plan, any property (Cash or otherwise) to be distributed under this Plan, which is unclaimed after six months following the relevant distribution date shall be forfeited and such distribution together with all interest earned thereon shall become an Asset of the Reorganized Debtor.

### M.    Duty to Timely Provide Financial Documents if Plan confirmed by § 1191(b)

The Debtor shall provide financial documents including, tax returns, or other financial information requested by the Subchapter V Trustee.

### N.    Chapter 11 Post-Confirmation Quarterly Operation Report

#### 1.    Consensual Plan

If the Debtor's Plan is confirmed under § 1191(a), the Debtor shall file the Chapter 11 Post-Confirmation Quarterly Operating Report.

#### 2.    Non-Consensual Plan

If the Debtor's Plan is confirmed under § 1191(b), the Debtor shall file the Chapter 11 Post-Confirmation Quarterly Operating Report.

Dated: July 22, 2024

/s/ Jeffrey S. Ainsworth
Jeffrey S. Ainsworth, Esquire
Fla. Bar No.: 060769
E-mail: *jeff@bransonlaw.com*
Cole B. Branson, Esquire
Florida Bar No.: 1049610
E-mail: *cole@bransonlaw.com*
**BransonLaw, PLLC**
1501 E. Concord Street
Orlando, Florida 32803
Telephone (407) 894-6834
Fax (407) 894-8559
Attorneys for Debtor

## EXHIBIT A - LIQUIDATION ANALYSIS

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:

                                                  Case No. 6:24-bk-00362-LVV

THE FARM, LLC d/b/a CURATED
AMERICAN GETAWAYS, LLC,                           Chapter 11
                                                  Subchapter V

           Debtor.                                 EIN:  46-0629913

_____/

      As part of the Chapter 11 confirmation process, Section 1129(a)(7) of the Bankruptcy Code requires that each holder of a claim or an equity interest in each respective class either (i) has accepted the plan or (ii) will receive under the plan value that is not less than the amount that such holder would receive if the debtors had liquidated under chapter 7 of the Bankruptcy Code (the "Liquidation Analysis").

      Below is a summary of an illustrative Liquidation Analysis showing the estimated anticipated distribution creditors would receive in a hypothetical liquidation under Chapter 7 of the Bankruptcy Code. Under Chapter 7 of the Bankruptcy Code, the Debtor's assets would be liquidated by a Chapter 7 trustee with Court supervision. As demonstrated below, the hypothetical sale proceeds in such a liquidation would provide for lower recoveries as compared to the recoveries under the Plan, and as a result the Debtors believe that, under the Plan, Holders of Claims would receive value greater than the amounts that such Holders would receive if the Debtors were forced to liquidate under chapter 7 of the Bankruptcy Code, and therefore the Plan satisfies the "best interests" test of Section 1129(a)(7) of the Bankruptcy Code.

**Limitations and Key Assumptions Underlying the Hypothetical Liquidation**

**THE HYPOTHETICAL LIQUIDATION ANALYSIS PRESENTED HEREIN HAS BEEN PREPARED SOLELY FOR ILLUSTRATIVE PURPOSES AND DOES NOT REPRESENT OR CLAIM TO REPRESENT ANY ASSUMPTIONS OR COMPARISONS FOR ANY OTHER PURPOSE. NOTHING CONTAINED IN THE LIQUIDATION ANALYSIS IS INTENDED TO BE OR CONSTITUTES A CONCESSION BY OR ADMISSION OF ANY DEBTOR FOR ANY PURPOSE.**

## EXHIBIT A - LIQUIDATION ANALYSIS

| **Assets** | **Estimated Liquidation Value as of 6/1/24** |
|---|---|
| Cash, cash equivalents, and financial assets. | $5,926.43 |

1

| | |
|---|---|
| Machinery, equipment, vehicles | $234,000.00 |
| Inventory | $8,000.00 |
| Farming and fishing-related assets | $20,000.00 |
| Office furniture, fixtures, and equipment | $168,550.00 |
| | |
| **TOTAL LIQUIDATION VALUE:** | **$432,651.72** |
| | |
| Secured Debt | $2,803,210.77 |
| Priority Debt | $279,388.65 |
| Administrative (Chapter 7) | $3,550.00 |
| Administrative (Chapter 11) | $150,000.00 |
| **TOTAL SECURED DEBT, AND ADMINISTRATIVE CLAIMS:** | **$3,236,149.42** |
| **AVAILABLE FOR GENERAL UNSECURED CLAIMS:** | **$0.00** |

## Ex. B - Plan 1 year /The Farm, LLC

| GROSS RECEIPTS | August | September | October | November | December | January | February | March | April | May | June '25 | July '25 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Sales | 437,670 | 462,809 | 425,730 | 407,000 | 389,025 | 365,300 | 355,100 | 382,500 | 397,200 | 402,820 | 412,800 | 411,300 | 4,849,254.00 |
| (Returns and Allowances) | 78,800 | 82,100 | 57,000 | 33,200 | 25,000 | 23,100 | 16,000 | 15,500 | 16,000 | 14,000 | 14,500 | 16,520 | 391,720.00 |
| Gross Sales | 358,870 | 380,709 | 368,730 | 373,800 | 364,025 | 342,200 | 339,100 | 367,000 | 381,200 | 388,820 | 398,300 | 394,780 | 4,457,534.00 |
| COST OF GOODS SOLD | | | | | | | | | | | | | |
| purchases | | | | | | | | | | | | | - |
| Total Cost of Goods Sold | - | - | - | - | - | - | - | - | - | - | - | - | - |
| Gross Profit | 358,870 | 380,709 | 368,730 | 373,800 | 364,025 | 342,200 | 339,100 | 367,000 | 381,200 | 388,820 | 398,300 | 394,780 | 4,457,534 |
| EXPENSES | | | | | | | | | | | | | |
| Rent | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 130,000 | 1,560,000 |
| Officer Compensation | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 39,958 | 479,496 |
| Subcontractor Payroll | 45,050 | 45,050 | 35,000 | 35,000 | 33,200 | 29,000 | 29,000 | 36,500 | 39,200 | 41,200 | 41,200 | 41,000 | 450,400 |
| Guest Ticket and Travel Purchases | 49,100 | 50,200 | 50,200 | 43,200 | 37,500 | 27,600 | 27,600 | 37,000 | 52,000 | 26,000 | 26,000 | 31,500 | 457,900 |
| Materials | 12,500 | 17,300 | 18,200 | 17,200 | 16,500 | 13,200 | 13,200 | 14,000 | 17,300 | 17,300 | 16,500 | 16,500 | 189,700 |
| Utilities | 19,880 | 19,880 | 27,020 | 27,020 | 21,200 | 22,400 | 22,400 | 19,800 | 14,000 | 14,000 | 17,300 | 17,350 | 242,250 |
| Advertising | 8,300 | 8,300 | 7,000 | 7,000 | 5,500 | 5,500 | 5,500 | 4,000 | 4,000 | 4,000 | 3,500 | 3,500 | 66,100 |
| Bank Service Fees | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Insurance | 12,150 | 12,150 | 9,300 | 9,300 | 9,300 | 9,300 | 9,300 | 9,300 | 13,400 | 9,300 | 9,300 | 9,300 | 121,400 |
| Groceries | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 3,100 | 37,200 |
| Repairs and Maintenance | 500 | 500 | 2,500 | 1,200 | 500 | 500 | 500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 20,700 |
| Credit Card Fees | 11,300 | 14,200 | 12,700 | 7,300 | 10,094 | 7,420 | 9,070 | 9,088 | 12,550 | 12,080 | 13,504 | 13,220 | 132,526 |
| Autos | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 6,544 | 78,528 |
| Total Operating Expenses | 339,382 | 350,182 | 342,522 | 327,822 | 314,396 | 295,522 | 297,172 | 312,790 | 335,552 | 306,982 | 310,406 | 315,472 | 3,848,200 |
| Net Operating Income | 19,488 | 30,527 | 26,208 | 45,978 | 49,629 | 46,678 | 41,928 | 54,210 | 45,648 | 81,838 | 87,894 | 79,308 | 609,334 |
| Sub V Trustee | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 12,000 |
| Lease Cure | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 18,375 | 220,500 |
| Vehicle Cure | | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 3,272 | 35,992 |
| Priority Claims | | | | 8,125 | 8,125 | 8,125 | 8,125 | 8,125 | 8,125 | 8,125 | 8,125 | 8,125 | 73,125 |
| SBA | | | | 906 | 906 | 906 | 906 | 906 | 906 | 906 | 906 | 906 | 8,151 |
| General Unsecured | | | | | | | | | | | | 79,566 | 79,566 |
| Administrative Claims | | | | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 20,000 | 180,000 |
| Total Debt Service | 19,375 | 22,647 | 22,647 | 51,678 | 51,678 | 51,678 | 51,678 | 51,678 | 51,678 | 51,678 | 51,678 | 131,244 | 609,334 |
| NET BUSINESS INCOME (LOSS) | 113 | 7,880 | 3,561 | (5,700) | (2,049) | (5,000) | (9,750) | 2,532 | (6,030) | 30,160 | 36,216 | (51,936) | 0 |

## Ex. B - Projections 3 years/The Farm, LLC

| | Year 1 | Year 2 | Year 3 | Total |
|---|---|---|---|---|
| **GROSS RECEIPTS** | | | | |
| Sales (post tax) | $ 4,849,254 | $ 4,873,500 | $ 4,897,868 | $ 14,620,622.04 |
| (Returns and Allowances) | $ 391,720 | $ 403,472 | $ 415,576 | $ 1,210,767.35 |
| **Gross Sales** | $ 4,457,534 | $ 4,470,029 | $ 4,482,292 | $ 13,409,854.69 |
| **COST OF GOODS SOLD** | | | | $ - |
| purchases | | | | $ - |
| **Total Cost of Goods Sold** | $ - | $ - | $ - | $ - |
| **Gross Profit** | $ 4,457,534 | $ 4,470,029 | $ 4,482,292 | $ 13,409,854.69 |
| **EXPENSES** | | | | $ - |
| Rent | $ 1,560,000 | $ 1,647,000 | $ 1,699,700 | $ 4,906,700.00 |
| Officer Compensation | $ 479,496 | $ 479,496 | $ 479,496 | $ 1,438,488.00 |
| Subcontractor Payroll | $ 450,400 | $ 473,500 | $ 493,875 | $ 1,417,775.00 |
| Guest Ticket and Travel Purchases | $ 457,900 | $ 457,900 | $ 457,900 | $ 1,373,700.00 |
| Materials | $ 189,700 | $ 189,700 | $ 189,700 | $ 569,100.00 |
| **Utilities** | $ 242,250 | $ 242,250 | $ 242,250 | $ 726,750.00 |
| Advertising | $ 66,100 | $ 66,761 | $ 67,429 | $ 200,289.61 |
| Bank Service Fees | $ 12,000 | $ 12,000 | $ 12,000 | $ 36,000.00 |
| Insurance | $ 121,400 | $ 127,470 | $ 133,844 | $ 382,713.50 |
| Groceries | $ 37,200 | $ 39,060 | $ 41,013 | $ 117,273.00 |
| Repairs and Maintenance | $ 20,700 | $ 52,400 | $ 72,770 | $ 145,870.00 |
| Credit Card Fees | $ 132,526 | $ 128,032 | $ 123,841 | $ 384,399.00 |
| Autos | $ 78,528 | $ 78,528 | $ 78,528 | $ 235,584.00 |
| **Total Operating Expenses** | $ 3,848,200 | $ 3,994,097 | $ 4,092,345 | $ 11,934,642.11 |
| **Net Operating Income** | $ 609,334 | $ 475,932 | $ 389,947 | $ 1,475,212.58 |
| Sub V Trustee | $ 12,000 | $ 12,000 | $ 12,000 | $ 36,000.00 |
| Lease Cure | $ 220,500 | $ 120,000 | | $ 340,500.00 |
| Vehicle Cure | $ 35,992 | $ 3,727 | | |
| Priorty Claims | $ 73,125 | $ 108,167 | $ 108,167 | $ 289,458.44 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| SBA | $ | 8,151 | $ | 10,867 | $ | 10,867 | $ | 29,885.88 |
| General Unsecured | $ | 79,566 | $ | 41,171 | $ | 78,913 | $ | 199,650.00 |
| Administrative Claims | $ | 180,000 | $ | 180,000 | $ | 180,000 | $ | 540,000.00 |
| Total Debt Service | $ | 609,334 | $ | 475,932 | $ | 389,947 | $ | 1,475,213.32 |
| NET BUSINESS INCOME (LOSS) | $ | - | $ | (0) | $ | (0) | $ | (0.74) |