**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | Case No.: 6:24-bk-00362-LVV |
| | Chapter 11 |
| **THE FARM, LLC,** | Subchapter V |
| | EIN: 46-0629913 |
| Debtor. | |
| _____/ | |

**DEBTOR'S CONFIRMATION MEMORANDUM**
**AND DECLARATION IN SUPPORT OF DEBTOR'S PLAN OF REORGANIZATION**

The Farm, LLC (the "Debtor"), by and through its undersigned counsel offers the following memorandum in support of confirmation of the Second Amended Plan of Reorganization Submitted by The Farm, LLC, dated September 18, 2024 (Doc. No. 424) [the "Plan"]. Definitions in the Plan shall be applicable in this memorandum and declaration.

**I.    BACKGROUND**

    **A.    Description of Debtor's Business**

1.  On January 25, 2024 (the "Petition Date"), Debtor filed a petition for reorganization under Subchapter V of Chapter 11 of Title 11 of the United Stated Code (the "Bankruptcy Code").

2.  The Debtor is a limited liability company organized as THE FARM LLC in Kentucky on June 21, 2012, and which registered in Florida to do business as ("d/b/a") CURATED AMERICAN GETAWAYS, LLC on April 11, 2023.

3.  The Debtor offers high-end, luxury vacation homes and venues for short-term rental at locations across the United States, along with excursions and experiences in connection with same. The Debtor's principal place of the administrative business is located at 601

Sycamore Street, Unit 6106, Kissimmee, Florida, 34747, which is leased from Evelio A. Perez (an individual who is not an insider).

    **B.**    **Events Leading up to Chapter 11 Case**

    4.    The Debtor, as tenant, has entered into approximately twenty-five (25) separate lease agreements ("Leases") for the vacation homes and venues (the "Properties") with terms for a duration of one year or longer; and the Debtor then rents those Properties to the general public on a short-term (generally weekly) basis. The Debtor was operating successfully and profitably but began suffering from cash flow issues due to unconscionable and usurious loans that the Debtor unfortunately accepted from merchant cash advance lenders ("MCA" lenders or so-called "factoring" lenders), as well as other factors. The Debtor commenced this Chapter 11 Case in order to implement a comprehensive restructuring, stabilize its operations for the benefit of its customers, secured creditors, employees, vendors, and other unsecured creditors; and to propose a mechanism to efficiently address and resolve all claims. The MCA lenders' ability to take funds from the Debtor's bank accounts unilaterally has made it difficult for the Debtor to operate. This situation has caused the Debtor to become delinquent on various tax obligations and has resulted in the Debtor's credit card issuer freezing approximately $145,000.00 of the Debtor's funds for "risk review," which has posed additional financial and cash flow impediments on the Debtor. The filing of this Chapter 11 Case is not the end-result of any strategy or attempt to avoid any lawful responsibilities or obligations. Rather, the Debtor commenced this Chapter 11 Case after a comprehensive review of all realistic alternatives and the consideration and balancing of a variety of factors.

    **C.**    **Chapter 11 Case**

5. Since the Petition Date, Debtor has continued to operate its business as a Debtor-in-possession under §§ 1101(a) and 1108 of the Code. Pursuant to various provisions of the Code, Debtor has sought and obtained several orders from the Bankruptcy Court intended to facilitate the ongoing operations of Debtor. Those orders authorized Debtor to, among other things (i) retain counsel; and (ii) operate its business as Debtor-in-possession.

## II.  PLAN OVERVIEW

6. The Plan contemplates Debtor's continued corporate existence. The Plan will be funded from any and all lawful business means. All Claims against the Reorganized Debtor shall be classified and treated pursuant to the terms of the Plan. As discussed more fully below, the Plan contains 8 classes of secured claims; 1 class of unsecured claims; and 1 class of equity security holders. Except to the extent that the Holder and Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim against Debtor shall receive on account of such Claim, the amount of such holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a five (5) year amortization and maturity from the Petition Date with payments made monthly. Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.

### A.  Priority Tax Claims

7. Except to the extent that the Holder and Debtor have agreed or may agree to a different treatment, each holder of an Allowed Priority Tax Claim[1] against Debtor shall receive on account of such Claim, the amount of such holder's Allowed Claim in accordance with § 1129(a)(9)(c) of the Code, which will be paid based on a five (5) year amortization and maturity from the Petition Date with payments made monthly. Holders of Allowed Secured Tax Claims

---

[1] Any difference between the amount of the Allowed Priority Tax Claim and the Allowed Claim that does not qualify for priority treatment under 11 U.S.C. 507(a)(8) shall be treated as a Class 9 General Unsecured Claim.

shall receive interest at the statutory rate. Payments will commence on the later of the Effective Date or on such date as a respective Priority Tax Claim becomes Allowed.

8. **Priority Non-Tax Claims**

Any person that asserts a Priority Non-Tax Claim shall, on or before the Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as a Priority Non-Tax Claim, specifying the amount of and the basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of a Priority Non-Tax Claim shall bar such claimant from seeking recovery on such Claim.

    a. **Consensual Plan Treatment:**

If the Class of Allowed Priority Non-Tax Claim Holders vote in favor of the Plan, such Class shall receive deferred cash payments based on a five (5) year amortization and maturity from the Effective Date with payments made monthly.

    b. **Nonconsensual Plan Treatment:**

Each holder of a Allowed Priority Non-Tax Claim of the Debtor shall be paid by the Debtor one hundred percent (100%) of its Allowed Claim over sixty (60) equal monthly payments.

**B.** **Secured Claims**

9. **Class 1 – Ally Claim 16 Secured Claim**

Class 1 consists of the Ally Claim 16 Secured Claim. This Claim is secured by a lien on the Ally Claim 16 Collateral. The amount of the Class 1 Secured Claim is $36,525.23,

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 16 Collateral, and the Debtor shall pay the Ally Class 1 Claim in accordance with the contract documents that gave rise to said claim.

10. **Class 2 – Ally Claim 17 Secured Claim**

Class 2 consists of the Ally Claim 17 Secured Claim. This Claim is secured by a lien on the Ally Claim 17 Collateral. The amount of the Class 2 Secured Claim is $40,934.70, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 17 Collateral, and the Debtor shall pay the Ally Class 2 Claim in accordance with the contract documents that gave rise to said claim.

11. **Class 3 Ally Claim 18 Secured Claim**

Class 3 consists of the Ally Claim 18 Secured Claim. This Claim is secured by a lien on the Ally Claim 18 Collateral. The amount of the Class 3 Secured Claim is $34,678.04, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 18 Collateral, and the Debtor shall pay the Ally Class 3 Claim in accordance with the contract documents that gave rise to said claim.

12. **Class 4 Ally Claim 19 Secured Claim**

Class 4 consists of the Ally Claim 19 Secured Claim. This Claim is secured by a lien on the Ally Claim 19 Collateral. The amount of the Class 4 Secured Claim is $68,790.11, less payments made preconfirmation. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

Ally shall retain its lien on the Ally Claim 19 Collateral, and the Debtor shall pay the Ally Class 4 Claim in accordance with the contract documents that gave rise to said claim.

13. **Class 5 Ally Claim 20 Secured Claim**

Class 5 consists of the Ally Claim 20 Secured Claim. This Claim is secured by a lien on the Ally Claim 20 Collateral. The amount of the Class 5 Secured Claim is $32,624.37, less payments made prepetition. Any postpetition arrearage shall be cured within twelve months after the Effective Date. This Class is Impaired.

Ally shall retain its lien on the Ally Claim 20 Collateral, and the Debtor shall pay the Ally Class 5 Claim in accordance with the contract documents that gave rise to said claim.

14. **Class 6 Bridgecrest Secured Claim**

Class 6 consists of the Bridgecrest Secured Claim. This Claim is secured by a lien on the Bridgecrest Collateral. The amount the Class 6 Secured Claim is $41,084.54, less payments made prepetition. This Class is Unimpaired.

Bridgecrest shall retain its lien on the Bridgecrest Collateral, and the Debtor shall pay the Bridgecrest Class 6 Claim in accordance with the contract documents that gave rise to said claim.

15. **Class 7 – Osceola Secured Claim**

Class 7 consists of the Osceola Secured Claim. This Claim is secured by a lien on the Osceola Collateral. The amount of the Class 7 Secured Claim is $4,391.22. This Class is Unimpaired.

The Debtor will pay or cause to be paid the Allowed Secured Claim of Osceola in full on the Effective Date. This claim shall be paid directly by the Debtor.

16. **Class 8 SBA Secured Claim**

Class 8 consists of the SBA Secured Claim. This Claim is secured by a lien on the SBA Collateral. The amount of the Class 8 Secured Claim is $195,550.00. This Class is Impaired.

To the extent that this Claim is allowed as a secured claim, then the holder will: (i) retain the liens securing the Claim to the extent of the allowed amount of the secured claim; and (ii) receive on account of such Claim deferred cash payments totaling at least the allowed amount of the Claim, of a value, as of the Effective Date of the claimant's interest in the estate's interest in the property securing the claim. Accordingly, the Reorganized Debtor shall make sixty (60) equal monthly payments of principal and interest in the amount of $3,579.33, which payment amount is calculated based upon amortizing the amount of the Allowed Secured Claim over a five-year period with interest at the three and three-quarter percent (3.75%) per annum. This claim shall be paid directly by the Debtor.

C. **Unsecured Claims**

17. **Class 9 – General Unsecured Claims**

Class 9 consists of the Allowed Unsecured Claims against the Debtor. This Class is Impaired.

a. Consensual Plan Treatment:

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. The Debtor proposes paying unsecured creditors a *pro rata* portion of $223,500.00. Payments will be made in equal quarterly payments of $18,625.00. Payments shall commence on the fifteenth day of the month, on the first month that begins more than ninety days after the Effective Date and shall continue quarterly for eleven additional quarters. Pursuant to §1191, the value to be distributed to unsecured creditors is

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

greater than the Debtor's projected disposable income to be received in the 3-year period beginning on the Effective Date. Holders of Class 9 claims shall be paid directly by the Debtor.

      b.      Nonconsensual Plan Treatment:

The liquidation value or amount that unsecured creditors would receive in a hypothetical chapter 7 case is approximately $0.00. Accordingly, the Debtor proposes to pay unsecured creditors a *pro rata* portion of its projected Disposable Income, $199,650.00. If the Debtor remains in possession, plan payments shall include the Subchapter V Trustee's administrative fee which will be billed hourly at the Subchapter V Trustee's then current allowable blended rate. Plan Payments shall commence on the fifteenth day of the month, on the first month that is one year after the Effective Date and shall continue annually for two additional years. The initial annual payment shall be $83,599.00. Holders of Class 9 claims shall be paid directly by the Debtor.

If the Debtor defaults in making an annual payment and fails to cure the payment default before the following annual payment is due, then the Debtor shall liquidate assets to pay the holders of allowed unsecured claims.

    **D.**    **Equity Security Holders**

    18.    **Class 10 – The Farm, LLC Equity Interests**

Class 10 consists of any and all equity interests and warrants currently issued or authorized in the Debtor. This Class is Unimpaired.

Holders of Class 10 interests shall retain their full equity interest in the same amounts, percentages, manner, and structure as existed on the Petition Date.

    **E.**    **Administrative Claims**

    19.    **Non-ordinary Course Administrative Claims**

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

      a.      Any person, including any professional, including the Subchapter V Trustee, and any landlord, who has rendered value or services to the Debtor during the course of this Case that asserts an Administrative Claim arising before the Confirmation Date, including Claims under § 503(b) of the Code and Claims for unpaid post-petition rent, but excluding Ordinary Course Administrative Claims as discussed *infra*, shall, on or before the Bar Date or other date as set by Bankruptcy Court order, file an application, motion, or request, as called for by the Rules, with the Bankruptcy Court for allowance of such Claim as an Administrative Claim specifying the amount of and the basis for such Claim; provided, however, that applicants who have previously filed applications, motions, or requests with the Bankruptcy Court need not file another such paper for the same Claim. Failure to timely file an application, motion, or request for allowance pursuant to this Section by any holder of Nonordinary Course Administrative Claim shall bar such claimant from seeking recovery on such Claim.

      b.      **Consensual Plan Treatment:**

      Each holder of a Nonordinary Course Administrative Claim shall be paid one hundred percent (100%) of its Allowed Nonordinary Course Administrative Claim in sixty (60) equal monthly payments beginning on the later of the Effective Date or the first day of the first full month after such Claim becomes Allowed, or as the holder of such Claim and the Debtor may otherwise agree.

      c.      **Nonconsensual Plan Treatment:**

      Each holder of a Nonordinary Course Administrative Claim shall be paid one hundred percent (100%) of its Allowed Nonordinary Course Administrative Claim in sixty (60) equal monthly payments beginning on the later of the Effective Date or the first day of

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

the first full month after such Claim becomes Allowed, or as the holder of such Claim and the Debtor may otherwise agree.

20.  **Ordinary Course Administrative Claims**

Ordinary Course Administrative Claims will be resolved through the performance of the obligation by the Debtor in accordance with the terms and conditions of agreement or applicable law giving rise thereto. An applicant for such Claim need not file an application, motion, or request to protect its rights with respect to Ordinary Course Administrative Claims.

**III.    CONFIRMATION OF PLAN – SECTION 1191**

11 U. S. C. §1191(a) provides that "The court shall confirm a plan under this subchapter only if all of the requirements of section 1129(a), other than paragraph (15) of that section, of this title are met."  Further, 11 U. S. C. §1191(b) provides that:

> … if all of the applicable requirements of section 1129(a) of this title, other than paragraphs (8), (10), and (15) of that section, are met with respect to a plan, the court, on request of Debtor, shall confirm the plan notwithstanding the requirements of such paragraphs if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

The Debtor contends that the requirements of §§1191 and 1129(a) have been met for the following reasons.

**IV    PLAN COMPLIANCE – SECTION 1129(a)(1)**

The Plan[2] complies with the applicable provisions of the Code.  By way of example, the Plan:

        a.    includes a brief history of the business operations of Debtor;

        b.    includes a liquidation analysis;

---

[2] Definitions in the Plan shall be applicable herein.

10

   c. includes projections with respect to the ability of Debtor to make payments under the proposed plan of reorganization;

   d. provides for the submission of all or such portion of the future earnings or other future income of Debtor to the supervision and control of the Trustee as is necessary for the execution of the Plan.

   e. Designates, subject to Section 1122 of the Code, Classes of Claims and Classes of Interests;

   b. Specifies any Class of Claims or Interest that is not impaired under the Plan;

   c. Specifies the treatment of any Class of Claims or Interests that is impaired under the Plan;

   d. Provides the same treatment for each Claim or Interest of a particular Class, unless the holder of a particular Claim or Interest agrees to a less favorable treatment of such particular Claim or Interest; and

   e. Provides adequate means for the Plan's execution and implementation.

## V. PROPONENT COMPLIANCE – SECTION 1129(a)(2)

The Plan proponent has complied with the applicable provisions of the Code. By way of example, Debtor has:

   a. Performed and complied with the duties imposed under Code Section 1184;

   b. Solicited acceptances to the Plan only in accordance with Code Section 1125; and

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

VI. **GOOD FAITH – SECTION 1129(a)(3)[3]**

The Plan has been proposed in good faith[4] and not by any means forbidden by the law. Pursuant to F.R.B.P. 3020(b)(2) and local rules, the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without evidence on such issues if no objections are made to confirmation of the Plan.

The Plan resulted from arms-length bargaining between Debtor's legal counsel, the secured creditors, administrative claims holders, and unsecured creditors. The Debtor and its creditors have acted in good faith and have received no unfair advantage.

VII. **PAYMENTS TO PROFESSIONALS – SECTION 1129(a)(4)**

All payments made, or to be made, by Debtor in or in connection with this case or in connection with the Plan either has been approved by or is subject to the approval of the Bankruptcy Court.

VIII. **POST CONFIRMATION OFFICERS/DIRECTORS – SECTION 1129(a)(5)**

Upon Confirmation of the Plan, the operations of the Reorganized Debtor shall be overseen by Debtor. Subject to the Plan, the management, operation, lease, sale, or abandonment of the assets of Debtor will be in the sole discretion of the Officers and Directors acting in good faith in accordance with the business judgment of the officers and directors and will not be subject to the supervision of the Bankruptcy Court, the creditors, or anyone else.

IX. **GOVERNMENT APPROVAL – SECTION 1129(a)(6)**

There are no governmental regulatory commissions with jurisdiction, after confirmation of the Plan, over the rates of Debtor whose approval is needed.

---

[3] If no objection is timely filed, then the Court may determine that the Plan has been proposed in good faith and not by any means forbidden by law without receiving evidence on the issues. F. R. B. P. 3020(b)(2).

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

X.  **BEST INTERST OF CREDITORS – SECTION 1129(a)(7)**

With respect to each Impaired Class of Claims or Interests, each holder of a Claim or Interest of such Class has either accepted the Plan or will receive or retain under the Plan on account of such Claim or Interest property of a value, as of the Effective Date, that is not less than the amount such holder would receive if Debtor was liquidated under Chapter 7 of the Code on such date.

XI.  **ACCEPTANCE OR REJECTION OF PLAN – 1129(a)(8)[5]**

Debtor's ballot tabulation is attached hereto and incorporated by reference as **Exhibit A**.

XII.  **PRIORITY CLAIMS – SECTION 1129(a)(9)**

The Plan provides for payment in full of all administrative priority claims.

XIII.  **ACCEPTANCE BY IMPAIRED CLASS – SECTION 1129(a)(10)[6]**

Section 1129(a)(10) provides that "if a class of claims is impaired under the plan, at least one class of claims that is impaired under the plan has accepted the plan, determined without including any acceptance of the plan by any insider." All impaired classes have not accepted the Plan.

XIV.  **FEASIBILITY – SECTION 1129(a)(11)**

Confirmation is not likely to be followed by liquidation or the need for further financial reorganization. The financial projections attached to the Plan demonstrate that Debtor will have sufficient funds to make the payments required under the Plan. In addition, the Plan contains

---

[4] "Good faith" merely requires that "there be a reasonable likelihood that the plan will achieve a result consistent with the standards described under the Code." *Hanson v. First Bank of South Dakota, N.A.*, 828 F.2d 1310, 1315 (8th Cir. 1987). Accord, *In re Madison Hotel Associates*, 749 F.2d 410, 425 (7th Cir. 1984).
[5] Section 1191(b) provides, in part, that "on the request of DEBTOR, the Court shall confirm the plan notwithstanding" the requirements of §1129(a)(8) "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."
[6] Section 1191(b) provides, in part, that "on the request of DEBTOR, the Court shall confirm the plan notwithstanding" the requirements of §1129(a)(10) "if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan."

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

Debtor's commitment to submit its future earnings or other future income to the supervision and control of the Trustee as is necessary for the execution of the Plan.

### XV. TRUSTEE FEES – SECTION 1129(a)(12)

As a case under Subchapter V, no fees are payable to the United States trustee.

### XVI. RETIREE CLAIMS – 1129(a)(13)

There are no unsecured claims for contributions to a retiree benefit plan, as Debtor does not have any retirement benefit plans.

### XVII. OBJECTIONS TO CONFIRMATION

The following objections to confirmation have been filed:

Objection to Confirmation of Debtor's Second Amended Chapter 11 Plan Filed by Tennessee Department of Revenue (Doc. No. 442); Limited Objection to Confirmation of Debtor's Second Amended Plan Filed by Michael by Creditor Ten Twenty Four Inc., d/b/a Beyond Pricing Ten Twenty Four, Inc. (Doc. No. 445); and Objection to Confirmation of Plan by The United States Trustee (Doc. No. 451).

Respectfully submitted this 27th day of October, 2024.

<u>Jeffrey S. Ainsworth</u>
Jeffrey S. Ainsworth, Esquire
Florida Bar No.: 0060769
E-mail: *jeff@bransonlaw.com*
**BransonLaw, PLLC**
1501 East Concord Street
Orlando, Florida 32803
Telephone: (407) 894-6834
Facsimile: (407) 894-8559
Attorney for Debtor

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

## "EXHIBIT A"

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
## www.flmb.uscourts.gov

**In re:**                                             Case No.: 6:24-bk-00362-LVV
                                                       Chapter 11
**THE FARM, LLC,**                                     Subchapter V
                                                       Ein: 46-0629913

        **Debtor.**
_____/

## BALLOT TABULATION

Date prepared: October 27, 2024
Prepared by: Jeffrey S. Ainsworth, Esquire, Attorney for Debtor
Filed with respect to Debtor's Second Amended Plan of Reorganization dated September 18, 2024 (Doc. No. 424)

| SUMMARY OF VOTE BY CLASSES OF CLAIMS AND INTEREST ||||||||||
|---|---|---|---|---|---|---|---|---|---|
| | | Impaired/ Unimpaired I/U | Total Voting || Acceptances || Percentages || Requisite Vote Y/N |
| Class | Description Name of Creditor | | No. | Amount | No. | Amount | No. | Amount | |
| Priority Claims | Priority Claims | I | 2 | $0.00 | 1 | $6,790.00 | 50 | 69% | N |
| 1 | Ally | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 2 | Ally | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 3 | Ally | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 4 | Ally | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 5 | Ally | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 6 | Bridgecrest | U | n/a | n/a | n/a | n/a | n/a | n/a | N/A |
| 7 | Osceola County Tx Collector | U | 1 | $4,391.22 | 1 | $4,391.22 | 100% | 100% | Y |
| 8 | SBA | I | 0 | $0.00 | 0 | $0.00 | 0 | 0% | N |
| 9 | General Unsecured | I | 13[7] | $479,220.86 | 7 | $452,814.05 | 54% | 94% | Y |

---

[7] There were 28 total ballots cast after the filing of the Second Amended Plan. Thirteen of the 28 ballots cast did not identify the correct class of claim. Of the ballots that did not identify the correct class of claim 7 ballots accepted and 6 ballots rejected. One additional uncounted ballot voted to accept; however, did not include an amount of claim. A final ballot did vote to accept or reject.

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

| 10 | Equity Interests | U | 0 | $0.00 | 0 | $0.00 | 0% | 0% | N/A |

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

**In re:**                                                           Case No.: 6:24-bk-00362-LVV
                                                                                      Chapter 11

**THE FARM, LLC,**                                  Subchapter V
                                                                                      Ein: 46-0629913

            **Debtor.**
_____/

**STATEMENT IN SUPPORT OF CONFIRMATION**

1.     I am the Chief Financial Officer of The Farm, LLC.

2.     I have knowledge of the facts and circumstances concerning Debtor and have participated in and supervised the formation of the Plan of Reorganization.

3.     I have personal knowledge of the factual matters set forth in the Confirmation Memorandum and Statement in Support of Confirmation.

4.     I declare under penalty of perjury that the facts contained in the Confirmation Memorandum and Statement in Support of Confirmation are true and correct.

*Katie M. Loane*
_____
Katie Martin Loane

Doc ID: a447cd85c09902b4079361e53fe979832f927cae

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
www.flmb.uscourts.gov

In re:                                                              Case No.: 6:24-bk-00362-LVV
                                                                    Chapter 11
THE FARM, LLC,                                                      Subchapter V
                                                                    Ein: 46-0629913

      Debtor.
_____/

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the foregoing, together with all exhibits, has been furnished on October 27, 2024, by electronic notice to U.S. Trustee, Attn.: Bryan Edgar Buenaventura, Esq., 400 W. Washington Street, Suite 1100, Orlando, FL 32801; L. Todd Budgen, Esquire, Subchapter V Trustee, P.O. Box 520546, Longwood, FL 32752; the Debtor: The Farm, LLC, 601 Sycamore Street, Unit 6106, Kissimmee, FL 34747.

                                        /s/ Jeffrey S. Ainsworth
                                        Jeffrey S. Ainsworth, Esquire
                                        **BransonLaw, PLLC**

Doc ID: a447cd85c09902b4079361e53fe979832f927cae